

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-28-2004

# Lighthouse Inst v. Cty of Long Branch

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-2343

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Lighthouse Inst v. Cty of Long Branch" (2004). *2004 Decisions.* Paper 674.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/674

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Case No: 03-2343

THE LIGHTHOUSE INSTITUTE
FOR EVANGELISM INC.,
d/b/a THE LIGHTHOUSE MISSION;
KEVIN BROWN, REVEREND,
Appellants

UNITED STATES OF AMERICA,
Intervenor-Plaintiff in D.C.
v.

THE CITY OF LONG BRANCH; BCIC FUNDING CORP;
BREEN CAPITAL SERVICES, INC.; ABRAMS GRATTA
& FALVO, P.C.; PETER S. FALVO, ESQ.; EUGENE
M. LA VERGNE, ESQ.; JOHN DOES A-Z

_____

On Appeal from the United States District Court for the District of New Jersey
District Judge: The Honorable William H. Walls
(Civil No. 00-03366)

_____

Argued March 22, 2004

_____

Before: FUENTES, SMITH and GIBSON, *Circuit Judges**

(Filed: May 28, 2004)

Roman P. Storzer (argued)
Anthony R. Picarello, Jr.
Derek J. Gaubatz

* The Honorable John R. Gibson, Senior Circuit Judge for the United States Court of
Appeals for Eighth Circuit, sitting by designation.

The Becket Fund for Religious Liberty
1350 Connecticut Avenue, NW
Suite 605
Washington, DC  20036

Michael S. Kasanoff
Suite 321
157 Broad Street
P.O. Box 8175
Red Bank, NJ 07701

*Attorneys for Appellants*

Audrey J. Copeland (argued)
Marshall, Dennehey, Warner, Coleman & Goggin
18 Campus Boulevard
Suite 250
Newtown Square, PA 19073

Howard B. Mankoff
425 Eagle Rock Avenue
Suite 302
Roseland, NJ  07068

*Attorneys for Appellee*

_____

OPINION OF THE COURT
_____

SMITH, *Circuit Judge.*

Appellants, the Lighthouse Institute for Evangelism, Inc. and Reverend Kevin Brown (collectively, "the Mission"), appeal the District Court's denial of its Motion for Preliminary Injunction.  The Mission sued the City of Long Branch, New Jersey ("the City") under 42

2

U.S.C. §§ 1983, 3601 and 2000cc *et seq.*, challenging the facial and as applied legality of Long Branch's zoning ordinance ("the Ordinance") under the First and Fourteenth Amendments and the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. §§ 2000cc *et seq.* Both parties moved for summary judgment and the Mission also sought a preliminary injunction. At the time these cross-motions were filed, discovery had been stayed since its early stages.

The District Court ruled on the motions without conducting an evidentiary hearing,[1] dismissing all of the Mission's as applied challenges for either lack of exhaustion or ripeness, and denying the Mission's Motion for Preliminary Injunction.[2] In doing so, it noted that "Plaintiffs will not likely be able to prove, even after further factual development, that the Ordinance inherently violates their rights under RLUIPA." Because we agree that the Mission did not satisfy its burden of demonstrating a likelihood of success on the merits, we will affirm the District Court's denial of the Mission's Motion for Preliminary Injunction.

---

[1] The Mission has not argued that the absence of such a hearing was improper, nor is there any indication in the record that either party requested a hearing on this motion. This Court held in *Sims v. Greene*, 161 F.2d 87, 89 (3d Cir. 1947), that the failure to hold an evidentiary hearing to allow a party *to defend* against the grant of a preliminary injunction may be grounds for vacating such an injunction. There is no caselaw indicating that the contrary is also true, *i.e.*, that failure to hold a hearing to allow a party to present evidence in support of its motion for injunction may be cause for vacatur. In the absence of argument from the Mission on this point, we need not address it.

[2] The District Court had jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343(a) and 1367. This Court has jurisdiction pursuant to 28 U.S.C. § 1292(a)(1), which permits circuit courts to review an interlocutory decision of the District Court denying a motion for a preliminary injunction. The Mission challenges only the denial of the preliminary injunction as to its facial claims in this appeal.

## I.

Because we write only for the parties, we set forth only a brief recitation of the facts. The Mission is a Christian church which "seeks to serve the poor and disadvantaged in downtown Long Branch, New Jersey." From 1992 to 1994, the Mission carried out its activities from a rented location at 159 Broadway in the City of Long Branch. On November 8, 1994, the Mission purchased 162 Broadway, a property across the street from its rented property. Both properties are located in Long Branch's C-1 Commercial District. The Mission submitted a Zoning Permit Application to the City which sought permission to operate on the purchased property "as a church" and also requested that all applicable fees "be waived as a nonprofit church." The City denied that application because the proposed use was "not a permitted use in the Zone." The Letter of Denial also noted that the proposed use "would require prior approvals from the Zoning Board of Adjustment, including but not limited to, a use variance, site plan approval, & parking variance." In response to the Mission's request that fees be waived, the Letter advised that "any waiver of fees . . . must come from the City Council." The Mission did not appeal this decision, nor did it seek a variance from the City. Thereafter, the Mission commenced this civil action and moved for a Preliminary Injunction. The District Court denied the request for injunctive relief.

## II.

We review the denial of a preliminary injunction for abuse of discretion, but any "determination prerequisite to the issuance of an injunction" is reviewed according to the

4

standard applicable to that determination. *Tenafly Eruv Ass'n, Inc. v. Borough of Tenafly*, 309 F.3d 144, 156 (3d Cir. 2002) (internal citations omitted). This Court exercises plenary review over the District Court's conclusions of law and its application of the law to the facts. *Id.* Although an appellate court generally will not disturb the factual findings supporting the disposition of a preliminary injunction motion in the absence of clear error, in the context of a First Amendment claim, this Court has a "constitutional duty to conduct an independent examination of the record as a whole, . . . and cannot defer to the Court's factual findings unless they concern witnesses' credibility." *Id.* at 156-57 (internal quotations and citations omitted).

**III.**

Four factors determine whether a District Court will issue a preliminary injunction. The first two threshold showings which the movant must demonstrate are: (1) that he is reasonably likely to prevail eventually in the litigation, and (2) that he is likely to suffer irreparable injury without relief. *Tenafly*, 309 F.3d at 157. If he is successful in satisfying these first two factors, then the court will consider, to the extent relevant, (3) whether an injunction would harm the party opposing the motion more than the movant, and (4) whether granting the relief would serve the public interest. *Id.* The District Court held, and we agree, that the Mission failed to make the first required showing, *i.e.*, that it had a reasonable likelihood of success on the merits.

The City's Ordinance Number 20-6.13 ("the Ordinance"), identifies the permitted uses

in the C-1 Central Commercial District, which include, *inter alia*: "Assembly hall, bowling alley and motion-picture theater, provided that it is carried on within a building." Ord. No. 20-6.13(A)(3), as amended in Ordinance § 345-30. The Ordinance does not identify "church" as a permitted use. Because its application to proceed as a church was denied, the Mission argues that "Long Branch does not permit churches as 'assembly halls.'" Thus, in the Mission's view, only secular assemblies may operate in the district. The record on appeal does not support this argument, however.

Because the Mission listed "church" in its application as the proposed use for the property, it is not clear whether the City would permit the Mission to operate under the assembly hall category, had it listed that use in its application. The Ordinance does not define "assembly hall." As the Mission points out in its brief, however, the American Planning Association's *Glossary of Zoning, Development and Planning Terms* includes religious assemblies in each of its suggested definitions for the term "assembly hall." *See* Michael Davidson & Fay Dolnick (eds.), *A Glossary of Zoning, Development, and Planning Terms*, American Planning Association Planning Advisory Service Report Nos. 491/492 at 39-40.[3] Although a number of religious uses are identified in these definitions of assembly

---

[3] The American Planning Association provides sample definitions from various zoning statutes around the country in order to define the terms listed in its glossary. In each of the definitions provided for "assembly hall," religious uses are included. The glossary provides, in relevant part:

> **assembly hall** . . . A building or portion of a building in which facilities are provided for . . . religious . . . purposes. . . .
> A meeting place at which the public or membership are assembled regularly or

6

hall, we note that the term "church" may in fact encompass a range of activities which would extend beyond the concept of an "assembly hall." *See, e.g.*, *Grace United Methodist Church v. City of Cheyenne*, 235 F. Supp. 2d 1186, 1996 (D. Wyo. 2002). Therefore, denial of the Mission's application as a "church" does not establish whether the Mission's application would have been approved as an "assembly hall."

It is significant that the sparse record before the District Court contained no evidence establishing that "Long Branch only allows assemblies of the secular sort," as the Mission contends in this appeal. The record before us reveals only the denial of the Mission's application which made no attempt to associate its proposed use with the assembly hall category. Moreover, as the Mission points out, there are a number of churches currently located within the C-1 district. The underlying action continues before the District Court on the facial claims, but at the early stage at which this motion was considered, the Mission simply did not make the kind of factual showing necessary to establish a likelihood of success on the merits.

**IV.**

With regard to its facial Free Exercise claim, the Ordinance is properly considered as

---

occasionally, including, but not limited to . . . churches . . . and similar places of assembly. . . .
A structure for groups of people to gather for an event or regularly scheduled program. Places of public assembly include, but are not limited to . . . religious institutions . . . and similar facilities. . . .
A building or a portion of a building used for gathering for such purposes as . . . worship, . . . church, or chapel[.] . . .

7

a neutral law of general applicability because churches are only one of numerous uses which are not specifically permitted uses and the purpose of the Ordinance is not aimed at speech, but rather at promoting the revitalization of the City's downtown area. *See Dep't of Human Resources of Oregon v. Smith*, 494 U.S. 872, 879 (1990); *see also Tenafly*, 309 F.3d at 165.[4] Other than the conclusory allegations in its complaint, as reiterated in the declaration of Kevin Brown, the Mission did not proffer any evidence to show that the Ordinance was either not neutral or not generally applicable. Under *Smith*, a Free Exercise claim alone cannot bar application of a neutral law of general applicability. 494 U.S. at 881. For the reasons described below, the Mission failed to show that it had a likelihood of success on any hybrid claim.

With respect to the Mission's claim that the Ordinance violated its rights to Free Speech and Assembly, we undertake rational basis review to determine whether the legislation is "reasonable, not arbitrary" and bears "a rational relationship to a [permissible] state objective." *Belle Terre v. Boraas*, 416 U.S. 1, 8 (1974). The Ordinance in this case is content-neutral because it is not aimed at prohibiting religious speech, but is rather a zoning ordinance which identifies certain uses which advance the City's goal of promoting

---

[4] *See also Mount Elliott Cemetery Ass'n v. City of Troy*, 171 F.3d 398, 405 (6th Cir. 1999) ("*Smith* applies to the free exercise challenge to the zoning decision in this case."); *Cornerstone Bible Church v. City of Hastings*, 948 F.2d 464, 472 (8th Cir. 1991) ("Absent evidence of the City's intent to regulate religious worship, the ordinance is properly viewed as a neutral law of general applicability"); *Rector, Wardens, and Members of the Vestry of St. Bartholomew's Church v. City of New York*, 914 F.2d 348, 354 (2d Cir. 1990) ("Landmarks Law is a facially neutral regulation of general applicability within the meaning of Supreme Court decisions").

commercial development in its downtown district. *Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 47 (1986). Like the ordinance examined in *Renton*, the omission of churches as a permitted use in the district resulted not from the content of the speech involved, but from the secondary effect (or lack thereof) of their presence, *i.e.*, churches were not identified as promoting commerce. Further, the Mission has not shown that there were no other channels for communication; rather, churches are specifically permitted in other districts and the Mission had been allowed to operate as a church in its rented property in the C-1 district. Accordingly, we agree with the District Court that the Mission did not show that it was likely to succeed on its Free Speech claim.

On the Mission's freedom of association claim, where the rights concerned are protected by the First Amendment and "abridgement of such rights, even though unintended, may inevitably follow from varied forms of governmental action," the regulation will only be upheld where the reasons advanced for its enactment were constitutionally sufficient to justify its possible deterrent effect upon such freedoms." *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 461 (1958). Even under this standard, however, the Mission did not demonstrate a likelihood of success on the merits. Tellingly, the Mission had not been prohibited or restricted at its rented location. As discussed above, the Mission presented no evidence that its application would have been rejected had it applied as an assembly. It is undisputed that the Mission could have operated by right in other districts in the City.

Finally, as to its Equal Protection claim, the Mission did not establish, under *Cleburne*

9

*v. Cleburne Living Center*, 473 U.S. 432 (1985), that it was not treated like secular assemblies because it did not demonstrate that it would be prohibited from operating in the C-1 district under the assembly hall category. 473 U.S. at 439 ("all persons similarly situated should be treated alike"). Additionally, due to the dearth of evidence in the record before the District Court on the Mission's Motion for Preliminary Injunction, the Mission also failed to show that the secular assemblies it identified as having been permitted in the district (*i.e.*, the Portuguese Club, the Spanish Fraternity of Monmouth County, the Brookdale Learning Center, the Seashore Day Camp, the New Jersey Repertory Company Theater and the Monmouth Medical Center Free Clinic) were similarly situated.

## V.

The Mission contends that the City violated subsections (a) and (b) of RLUIPA, 42 U.S.C. § 2000cc-2.[5] The Mission did not establish a likelihood of success on its "substantial burdens" RLUIPA claim under part (a), because it had operated for years at the rented location in the district and thus its opportunity for religious exercise was not curtailed by the Ordinance. *See Civil Liberties for Urban Believers (C.L.U.B.) v. City of Chicago*, 342 F.3d 752, 761 (7th Cir. 2003) ("substantial burden on religious exercise is one that necessarily bears direct, primary, and fundamental responsibility for rendering religious exercise . . .

---

[5] The Mission emphasizes its claim under part (b)(1), the "Equal Terms" provision, in this appeal but does not abandon its claims under the other parts of the statute. We will, therefore, address all of the Mission's facial claims under RLUIPA. In doing so, we note, as did the District Court, that the caselaw interpreting this relatively new statute in this and other Circuits is scarce. Because of the state of the record before the District Court in this case, we do not undertake in this opinion to clarify the state of the law in this area.

10

effectively impracticable"). Further, it is undisputed that the Mission could have operated as a church by right in other districts in the City.

Similar weaknesses also plagued the Mission's claim under part (b)(1), the Equal Terms provision. Because the Mission did not show that it would be prohibited from operating in the district if it applied under the "assembly hall" category, it could not show that the Ordinance, on its face, treated it on less than equal terms than a nonreligious assembly. Indeed, as noted above, the Mission also failed to produce evidence to support its contention that the secular assemblies it identified were actually similarly situated such that a meaningful comparison could be made under this provision. *See Congregation Kol Ami v. Abington Township*, 309 F.3d 120, 125 (3d Cir. 2002).

The Mission did not show a likelihood of success on its "Nondiscrimination" claim under part (b)(2) because there is no indication on the face of the statute that any distinction is drawn between religious and secular assembly halls (or in any other category, for that matter) and the Mission did not produce any other evidence to suggest that the City had interpreted it as such. In fact, the very definition for assembly hall that the Mission provided suggests that, absent evidence to the contrary, the Ordinance is probably neutral with respect to the inclusion of religious organizations and uses within its assembly hall category.

Finally, the Mission also failed to demonstrate that it had a likelihood of success on its claim that the City violated the "Exclusion and limits" provision of RLUIPA under part (b)(3), by either totally excluding religious assemblies from the jurisdiction or unreasonably

11

limiting religious assemblies, institutions or structures within a jurisdiction. It is undisputed that the Mission was not totally excluded from the jurisdiction because it could have operated in other districts in the City by right. The record contained no indication that the City would have denied the Mission's application to operate within the C-1 district had it applied under the category of "assembly hall." As the Mission did not show that it was limited as a religious assembly in the C-1 district, there was therefore no need for the District Court to assess whether the alleged limitation or exclusion was "unreasonable."

## VI.

On the basis of the record which was available to the District Court when it decided this Motion for Preliminary Injunction, there simply was no basis for the District Court to have concluded that the Mission had a likelihood of success on either of its facial challenges under the First Amendment or RLUIPA. The Ordinance does not exclude religious assemblies on its face and the Mission did not produce any evidence to show that the City's policy is such that it interprets the Ordinance to do so. Therefore, we will affirm the decision of the District Court.

*Lighthouse Institute v. City of Long Branch*, No. 03-2343.

JOHN R. GIBSON, Circuit Judge, concurring in the result and in the judgment.

I concur in the judgment, which denies the motion for a preliminary injunction and leaves open the possibility of further consideration of the issues on the motion for permanent injunction.

I have, however, some reservations about language in the court's opinion and am of the thought that these issues should be ventilated in the hearing still to come. The term "Assembly Hall" seems on its face to include a hall where people assemble for religious purposes. In my view the rejection of the church's application therefore demonstrates approval of secular assemblies and rejection of religious assemblies. Nor is the effect of the discrimination mitigated because the church could have operated elsewhere in the city; the church's mission, to "serve the poor and disadvantaged in downtown," can only be accomplished downtown. I concur with the understanding that these issues should be open for further consideration at the permanent injunction stage, rather than being barred by anything in the court's decision today.