**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0142-24

KDLi9 LLC,

     Plaintiff-Appellant,

v.

THE CITY OF JERSEY CITY
ZONING BOARD OF
ADJUSTMENT,

     Defendant-Respondent.

_____

        Submitted September 23, 2025 – Decided October 8, 2025

        Before Judges Gilson and Perez Friscia.

        On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Docket No. L-2958-23.

        Castano Quigley Cherami LLC, attorneys for appellant (Gregory J. Castano, Jr., and Schuyler Abbott, on the briefs).

        Vincent J. La Paglia, attorney for respondent.

PER CURIAM

Plaintiff KDLi9, LLC, appeals from the August 9, 2024 Law Division order dismissing plaintiff's complaint in lieu of prerogative writs and affirming defendant The City of Jersey City Zoning Board of Adjustment's (Board) denial of plaintiff's variance application pursuant to N.J.S.A. 40:55D-70(d)(1) of the Municipal Land Use Law (MLUL), N.J.S.A. 40:55D-1 to -171. Having reviewed the record, parties' arguments, and applicable law, we affirm.

I.

Plaintiff owns the property, Lot 28, Block 2802, on Central Avenue in Jersey City. The property's lot area is 8,065 square feet, and it is L-shaped with frontages on Lincoln Avenue and Central Avenue. The property's width is fifty-one feet and ten inches. The property has no parking, insufficient off-street parking nearby, and the closest municipal parking lot "reaches maximum capacity during peak hours."

In February 2019, the Board granted plaintiff's predecessor in title, AIJ Central Avenue, LLC (AIJ) variance relief under N.J.S.A. 40:55D-70(d)(1) due to the property's location in "split-lot zones," which created "hardships to conforming." The Board granted AIJ's application to construct a five-story mixed-use commercial and residential building. AIJ's approved plans permitted a 7,213 square feet supermarket on the ground floor. The top four floors were

2

to include nineteen one-bedroom apartments and eight two-bedroom apartments. The Board granted the use variance noting that although AIJ's project provided no parking, AIJ "complie[d] with the bicycle requirements by providing twenty-seven indoor spaces and the ten required spaces on the exterior for the commercial unit." Moreover, the Board found AIJ's "proposed plan eliminate[d] a curb cut and provide[d] for additional on-street parking and [wa]s a benefit as a whole."

Plaintiff purchased the property after AIJ secured the land use approvals. After over eighty percent of the building's construction was completed, plaintiff filed its October 13, 2022 application, seeking a use variance under N.J.S.A. 40:55D-70(d)(1) for the proposed religious use of a Hindu temple on the first floor. Plaintiff also requested bulk variances under N.J.S.A. 40:55D-70(c) for: lot width; lot area; and parking spaces.

Plaintiff further proposed that "the ground floor would contain the prayer/worship space, with ancillary spaces in the [basement]." It also requested a reduced 1,000 square feet of commercial space fronting on Central Avenue. The proposed house of worship had no planned prayer space seating. Further, the house of worship had "no off-street parking where [fifteen] spaces would be required."

3

Sixty-eight percent of plaintiff's property was in the Neighborhood Commercial District (NC zone).  The NC zone "recognize[d] the existence and importance of neighborhood business districts and provide ground floor commercial in mixed-use buildings to promote walkability."  Jersey City, N.J., Code § 345-45(A) (2022) (amended by Jersey City, N.J., Ordinance 23-103 (Oct. 25, 2023)).  Permitted uses in the NC zone included:

> 1. Retail sales of goods and services; 2. Offices; 3. Financial institutions without drive-thru facilities; 4. Restaurants, . . . 5. Theaters and museums; 6. Governmental uses; 7. Parks and playgrounds; 8. Residential apartments above ground floor; 9. Educational facilities, public and private, above ground floor; 10. Bars; 11. Child day care centers; 12. Medical offices; 13. Health clubs; 14. Cafes; 15. Any combination of the above.
>
> [§ 345-45(B).]

Additionally, thirty-two percent of the property was in the Neighborhood Housing District (R-1 zone).  The R-l zone ordinance provided:

> 1. The purpose of this district is to accommodate existing housing and encourage compatible in-fill development with . . . one- and two-family homes that preserve the streetscape, utilize on-street parking where the frontages are narrow and maintain the low-rise character of the area.

A-0142-24

2. An intended consequence of this designation is preserving the integrity of residential neighborhoods, limiting non-residential uses to appropriate areas, increasing the availability of community resources and reinforcing the viability of existing neighborhood districts.

[§ 345-40(A) (2022) (repealed by Jersey City, N.J., Ordinance 23-103 (Oct. 25, 2023)).]

Under Ordinance Section 345-40(B), permitted uses included houses of worship. Unlike the NC zone, the R-1 zone did not permit mixed uses. Section 345-40(C)(4) permitted accessory uses in the R-1 zone, including "[m]eeting rooms, recreation areas[,] and similar uses normally associated with houses of worship."

In the R-1 zone, under Section 345-40(F)(1), the minimum off-street parking requirements for lots with one or two-family dwellings exceeding 50 feet were one space per dwelling unit. Pursuant to Section 345-40(G)(1), the minimum lot size for a house of worship was 10,000 square feet, and the maximum height was "[f]our stories and forty (40) feet, exclusive of spires, towers and other ornamental features." The R-1 zone minimum parking standards for houses of worship were:

One space for . . . ten (l0) seats . . . . Houses of worship without seats or pews shall allow for ten (10) square feet per prayer space in calculating space and shall provide parking at a rate of one stall for each one hundred (100) square feet of prayer space.

[§ 345-40(I)(1).]

On April 13, 2023 and May 11, the Board held public hearings on plaintiff's application. Plaintiff presented the testimony of: Yogesh Mistry, an architect; Nittin Kohli, its owner; and Carolyn Worstell, a professional planner. The Board also heard from Yousef Saleh and members of the public, including Central Avenue Special Improvement District (SID) members.

Mistry testified that the temple was "not . . . a destination facility," and "5,239 square feet of the basement. . . . [would become] religious space," specifically "support spaces" for the ground floor prayer space. Regarding the requested use and bulk variances, Worstell testified that: the house of worship was "not permitted in the NC[ zone]" but "[wa]s permitted in the R-1 [zone]"; "access to the religious use" would not be "from Central Avenue"; "Central Avenue itself is a commercial corridor," and there was "significant transit access within a block of this particular site"; the house of worship would be under the "minimum standard[s]" for the R-1 zone, and "the benefit . . . outweigh[ed] the deficit"; "the proposed project [wa]s not providing off-street parking," and

6

"[fifteen] spaces would be required"; "the project . . . advance[d] the purposes of" the MLUL because "a house of worship w[ould] promote the general welfare," and the "commercial space [wa]s . . . consistent with" the area; and the "negative criteria" were satisfied because the "project . . . [would not] result in a substantial detriment to the public good or the general welfare," and "[h]ouses of worship inherently promote the public welfare" with no "substantial detriment to traffic or parking."

Members of the public objected to the revised proposed house of worship use, mentioning parking issues on Central Avenue. One SID member testified that plaintiff's proposal "to put a thousand[-]f[ee]t [of] retail up front and take all the rest for worship . . . . does[ not] work for a retail corridor." Another SID member objected, stating, "this [wa]s a terrible project," and "the whole problem . . . is parking." Saleh testified that SID's disfavor of "the proposed project ha[d] nothing to do with the religion" but "with the fact that . . . [the area] is a commercial corridor." Saleh relayed that SID, a "federation of businesses that come together to tax themselves essentially for the betterment of the residents," disapproved of the "religious nonprofit building[] . . . due to tax implications."

A-0142-24

At the conclusion of plaintiff's presentation, its counsel requested the Board grant the use variance application, stating:

> [O]ur team over the last couple of weeks was made very aware of . . . SID's position on the project. I will say our ownership and our office did make other community outreach as well. . . .
>
> . . . .
>
> . . . [W]e[ are] really working within the bounds of that previously approved project. [Plaintiff] had a different intent for this particular commercial space respecting the same commercial corridor and giving them nod to that with the commercial space fronting on Central [Avenue]. . . .

Francisco Espinoza, the City Planner, had raised to the Board the Religious Land Use And Institutionalized Persons Act[1] (RLUIPA), stating:[2]

> I just want to bring everyone's attention to . . . RLUIPA . . . . This is a Federal law that among other things protects religious institutions from unduly burdensome or discriminatory land use regulations . . . . It is a complex statute with five separate provisions which protects religious exercise in different but sometimes overlapping ways.
>
> So the first one . . . bars land use regulations that impose "a substantial burden" on religious exercise. It

---

[1] 42 U.S.C. §§ 2000cc to 2000cc-5.

[2] We have made stylistic changes to this section of the hearing transcript without brackets for ease of reading.

A-0142-24

> requires governments to treat houses of worship as favorably as non-religious assemblies. It bars governments from discriminating among religions. Bars governments from total exclusions of religious assemblies. Bars governments from unreasonabl[e] limitations of religious assemblies. . . .

Espinoza also noted prior to the end of the public comments that Jersey City permits "houses of worship in all [its] residential zones. And [p]lanning is consistent in not permitting [houses of worship] in all of our commercial corridors." Plaintiff asked Espinoza no questions regarding RLUIPA, offered no expert testimony on RLUIPA, and did not raise the RLUIPA before the Board or request any related findings.

On May 11, the Board denied plaintiff's variance application, with four members voting in favor and three against.[3] On July 20, the Board passed a resolution[4] denying the application "whether viewed under a particular-suitability test or as an inherently beneficial use."

Regarding particular suitability, the Board's resolution found:

---

[3] "[A] variance may be granted by a municipal board of adjustment under N.J.S.A. [40:55D-70(d)] only if at least five of the seven members of the board agree to it." Comm. for a Rickel Alt. v. Linden, 214 N.J. Super. 631, 636 (App. Div. 1987).

[4] N.J.S.A. 40:55D-10(g) requires municipal agencies to memorialize decisions in a resolution.

30. . . . Worstell argued that a house of worship "does inherently promote public welfare." For particular suitability purposes, however, the site would have to be particularly appropriate for a house of worship, and in this case it clearly is not. [Plaintiff]'s lot is undersized for a house of worship, and it has never been used or approved for same. . . .

31. . . . Worstell points out that [the property] is substantially larger than the 2,500-s[quare feet] minimum area required in the NC[ z]one . . . . [T]he property is also substantially smaller than the 10,000 [square feet] that would be required as a permitted R-1 use . . . . The Governing Body considers the parking impact of commercial use in the N[C z]one . . . to be less problematic than the parking impact where it is permitted in R-1 . . . ; [plaintiff] did not present persuasive evidence for the Board to find otherwise.

. . . .

33. . . . Worstell refers to "proximity to other higher intensity uses." That has never served as grounds for relief . . . [, and] [e]ven if proximity to other higher intensity uses demonstrated site suitability, that MLUL goal could be achieved with a permitted use. . . .

. . . .

35. The Board was not persuaded by []Worstell's suggestion that reducing the commercial space to 1,000 s[quare feet] . . . would retain its commercial character on Central Avenue . . . . The Board does not find that the retention of token commercial space warrants intensive additional parking impact for a nonpermitted use.

. . . .

10

37.   The presence of "transit service to the neighborhood inclu[ding] bus lines" does not make it particularly suitable.

The Board also found plaintiff's proposed use did not qualify as an inherently beneficial use. It stated:

57.   While the MLUL does not specifically identify houses of worship as inherently beneficial . . . , the Governing Body permits the use. However, the use is subject to certain bulk requirements, including the provision of minimum off[-]street parking. The public interest in houses of worship is tempered by the public interest in ensuring that such uses have adequate parking. . . .

58.   [Plaintiff] did not argue that the apartments or the commercial space are inherently beneficial. Thus, this would be at most a mixture of an inherently beneficial [use] and that which is not inherently beneficial.

The Board further found plaintiff "failed to meet the enhanced standard" for negative criteria. Finally, the Board noted regarding RLUIPA that:

62.   There was testimony from . . . Espinoza and there is language in the Interdepartmental Memo, regarding . . . RLUIPA[]. [Plaintiff] did not request the Board to make findings or otherwise assume jurisdiction respecting that federal legislation.

On August 18, 2023, plaintiff filed its complaint in lieu of prerogative writs alleging the Board's use variance denial was arbitrary, capricious, and unreasonable. Moreover, plaintiff averred the Board's use violated RLUIPA

11

because the Board failed "to provide the same consideration to the [a]pplication as it . . . previously g[ave] to non-religious assembly/institution uses in the area."

On August 9, 2024, the trial court affirmed the Board's denial of plaintiff's application and dismissed the complaint. The court found: "[p]laintiff's proposed use c[ould] not be considered . . . 'inherently beneficial'"; "the [p]roperty [wa]s not particularly suitable for use as a house of worship"; plaintiff "ha[d] not proven the positive or negative criteria necessary to obtain a (d)(1) variance"; and plaintiff was not permitted to seek relief under RLUIPA's equal terms provision, "as the City of Jersey City [wa]s not included as a party." While plaintiff argued that it was not seeking to invalidate the NC zone ordinances under RLUIPA, the court found Jersey City was an essential party on the RLUIPA claim because a ruling in plaintiff's favor "would require all proposed houses of worship in the N[C] zone to be approved by the Board[,] which would effectively rezone the N[C] zone."

On appeal, plaintiff contends the court erred in: finding the Board was not arbitrary, capricious, and unreasonable; and failing to reverse the Board under RLUIPA.

12

II.

"When reviewing a trial court's decision regarding the validity of a local board's determination, 'we are bound by the same standards as . . . the trial court.'" Jacoby v. Zoning Bd. of Adjustment of Englewood Cliffs, 442 N.J. Super. 450, 462 (App. Div. 2015) (quoting Fallone Props., LLC v. Bethlehem Twp. Plan. Bd., 369 N.J. Super. 552, 562 (App. Div. 2004)). "[A] court may not substitute its judgment for that of the board unless there has been a clear abuse of discretion." Berardo v. City of Jersey City, 476 N.J. Super. 341, 353 (App. Div. 2023) (alteration in original) (quoting Price v. Himeji, LLC, 214 N.J. 263, 284 (2013)). We review questions of law, including the interpretation of an ordinance, de novo. Dunbar Homes, Inc. v. Zoning Bd. of Adjustment of Franklin, 233 N.J. 546, 559 (2018).

"[A]n overriding principle governing judicial review of variance decisions by boards of adjustment is that, assuming an adequate basis in the record for a board's conclusions, deference to the judgment of local zoning boards ordinarily is appropriate." Lang v. Zoning Bd. of Adjustment of N. Caldwell, 160 N.J. 41, 58 (1999). "In evaluating a challenge to the grant or denial of a variance, the burden is on the challenging party to show that the zoning board's decision was

'arbitrary, capricious, or unreasonable.'" Price, 214 N.J. at 284 (quoting Kramer v. Bd. of Adjustment, 45 N.J. 268, 296 (1965)).

"A board acts arbitrarily, capriciously, or unreasonably if its findings of fact . . . are not supported by the record, or if it usurps power reserved to the municipal governing body or another duly authorized municipal official." Ten Stary Dom Pishin v. Mauro, 216 N.J. 16, 33 (2013). Pursuant to N.J.S.A. 40:55D-70(d) of the MLUL, "[a] board of adjustment has authority to grant a variance and permit the nonconforming use of zoned property." Burbridge v. Mine Hill, 117 N.J. 376, 384 (1990). "[B]ecause of the legislative preference for municipal land use planning by ordinance rather than variance, use variances . . . may be granted only in exceptional circumstances." Advance at Branchburg II, LLC v. Branchburg Twp. Bd. of Adjustment, 433 N.J. Super. 247, 253 (App. Div. 2013) (quoting Kinderkamack Rd. Assocs., LLC v. Mayor & Council of Oradell, 421 N.J. Super. 8, 12 (App. Div. 2011)). "[P]ublic bodies, because of their peculiar knowledge of local conditions, must be allowed wide latitude in their delegated discretion." Jock v. Zoning Bd. of Adjustment of Wall, 184 N.J. 562, 597 (2005). "Courts give greater deference to variance denials than to grants of variances, since variances tend to impair sound zoning."

Med. Ctr. at Princeton v. Twp. of Princeton Zoning Bd. of Adjustment, 343 N.J. Super. 177, 199 (App. Div. 2001).

An applicant seeking a use variance must establish proof of both the "positive and negative criteria." Price, 214 N.J. at 285 (quoting Smart SMR of N.Y., Inc. v. Fair Lawn Zoning Bd. of Adjustment, 152 N.J. 309, 323 (1998)). "The requirement that a use variance be based on proof of the positive criteria arises from the language of the MLUL, which limits the grant of a use variance to those cases in which there is a showing of 'special reasons.'" Ibid. (quoting N.J.S.A. 40:55D-70(d)). "The MLUL does not define special reasons, but 'subsequent judicial interpretations have "infus[ed] substantive meaning into the 'special reasons' standard."'" Ibid. (alteration in original) (quoting Coventry Square, Inc. v. Westwood Zoning Bd. of Adjustment, 138 N.J. 285, 295 (1994)). Our Supreme Court has "observed that 'special reasons exist whenever a variance proposes to secure any of the statutory zoning goals.'" Ibid. (quoting Burbridge, 117 N.J. at 386). Thus, "the promotion of the general welfare as the zoning purpose that most clearly amplifies the meaning of special reasons." Medici v. BPR Co., 107 N.J. 1, 18 (1987). "Special reasons" generally fall into one of three categories:

> (1) [W]here the proposed use inherently serves the public good, such as a school, hospital or public housing facility . . . ; (2) where the property owner would suffer "undue hardship" if compelled to use the property in conformity with the permitted uses in the zone . . . ; and (3) where the use would serve the general welfare because "the proposed site is particularly suitable for the proposed use."
>
> [Saddle Brook Realty, LLC v. Twp. of Saddle Brook Zoning Bd. of Adjustment, 388 N.J. Super. 67, 76 (App. Div. 2006) (quoting Smart SMR, 152 N.J. at 323).]

Our Supreme Court held in Medici that in addition to establishing special reasons, "it [is] appropriate to require an enhanced quality of proof, as well as clear and specific findings by the board of adjustment, that the grant of a use variance is not inconsistent with the intent and purpose of the master plan and zoning ordinance," also known as negative criteria. 107 N.J. at 4. A showing "to satisfy the first of the negative criteria focuses on the effect that granting the variance would have on the surrounding properties." Price, 214 N.J. at 286. Specifically, an applicant must show that a variance "can be granted without substantial detriment to the public good." New Brunswick Cellular Tel. Co. v. Borough of S. Plainfield Bd. of Adjustment, 160 N.J. 1, 14 (1999) (quoting N.J.S.A. 40:55D-70(d)). Regarding the second factor of the negative criteria, the Court elucidated that an applicant's proofs and a board's findings "must satisfactorily reconcile the grant of a use variance with the ordinance's continued

16

omission of the proposed use from those permitted in the zone, and . . . provide a . . . substantive basis . . . that the variance 'will not substantially impair the intent and purpose of the zone plan and zoning ordinance.'" Medici, 107 N.J. at 4 (quoting N.J.S.A. 40:55D-70(d)).

In 2009, the Legislature enacted N.J.S.A. 40:55D-4, defining an "inherently beneficial use" as one that "is universally considered of value to the community because it fundamentally serves the public good and promotes the general welfare. Such a use includes, but is not limited to, a hospital, school, child care center, group home, or a wind, solar or photovoltaic energy facility or structure." See also House of Fire Christian Church v. Zoning Bd. of Adjustment of Clifton, 379 N.J. Super. 526, 535 (App. Div. 2005) (recognizing use of a church or house of worship "is an inherently beneficial use of the land"). An inherently beneficial use is presumed to satisfy the positive criteria, and it need not satisfy an "enhanced quality of proof" for the negative criteria as set forth in Medici. Salt & Light Co. v. Willingboro Twp. Zoning Bd. of Adjustment, 423 N.J. Super. 282, 287 (App. Div. 2011). Despite the reduced standard of proof, a board need not automatically grant a proposed variance for an inherently beneficial use; rather, an evaluative process must be employed to determine whether an inherently proposed use is satisfied. Sica v Bd. of

Adjustment of Wall, 127 N.J. 152, 165-66 (1992). "This balancing, '[w]hile properly making it more difficult for municipalities to exclude inherently beneficial uses . . . permits such exclusion when the negative impact of the use is significant.'" Meridian Hosps. Corp. v. Borough of Point Pleasant, 325 N.J. Super. 490, 500 (App. Div. 1999) (alteration in original) (quoting Sica, 127 N.J. at 166).

III.

A.

We first address plaintiff's arguments that the Board erred in not granting its use variance application because the proposed house of worship is an inherently beneficial use and is particularly suitable. Plaintiff contends competent evidence in the record supported the Board's granting of the application, and therefore, the Board's denial is arbitrary, capricious, and unreasonable. We are unpersuaded.

Notably, plaintiff filed the present land use application after eighty percent of the mixed-use, five-story building was constructed pursuant to the Board's previously granted (d)(1) hardship use variance in 2018. The Board had approved the prior use variance, permitting the combined retail and residential property, in part because the property is split between two zones, the R-1 and

18

NC zones. Plaintiff's present application requested an increase from two uses to three proposed uses—residential, commercial, and a house of worship. The property's location is in a recognized retail corridor. Only one of the property's two zones permitted houses of worship. Relevantly, the majority of plaintiff's property—approximately 68%—is in the NC zone, which did not permit houses of worship, leaving only 32% in the R-1 zone, which permitted a one-story house of worship as opposed to plaintiff's five story building. § 345-40(G)(1). We also note that while plaintiff's proposed house of worship did not include seating, one parking space for every 100 square feet of prayer space was required. § 345-40(I)(1). Therefore, plaintiff was required to have at least fifteen parking spaces, but its application included no parking.

Plaintiff also contends that its mixed-use N.J.S.A. 40:55D-70(d)(1) application should have been viewed as an inherently beneficial use because it included a house of worship. Undisputedly, the Legislature's 2009 amendment to N.J.S.A. 40:55D-4 does not specifically include a house of worship as an inherently beneficial use. However, prior to N.J.S.A. 40:55D-4's enactment, appellate courts held that houses of worship were an inherently beneficial use because they promote the public's general welfare. See, e.g., Kali Bari Temple v. Zoning Bd. of Adjustment of Readington, 271 N.J. Super. 241, 248 (App.

19

Div. 1994) ("It has been held that a church use is inherently beneficial."). Notably, Worstell did not specifically address that plaintiff's use variance application sought multiple uses—residential, retail, and a house of worship.

Plaintiff's argument that its use variance application qualified as an inherently beneficial use is misplaced because the Board had already granted a hardship use variance for the mixed-use building, and plaintiff's mixed-use application that included an additional house of worship with other uses is clearly distinguishable from a single use house of worship variance application. The Board correctly found plaintiff's application "would be at most a mixture of an inherently beneficial" use. It has been recognized that including a house of worship "as a . . . component" of a larger mixed-use project does not turn "the entire project into an inherently beneficial use for purposes of obtaining a (d)(1) variance." Advance at Branchburg II, LLC, 433 N.J. Super. at 258. Thus, the Board's review of the positive criteria in relation to the mixed use was not in error. As the court noted, "[t]he [p]roperty w[ould] have twenty-seven residential units[,] and 61.4% of the floor area w[ould] be for residential use," so "[e]ven assuming . . . an inherently beneficial use, [because] a house of worship w[ould] not be the predominant use of this [p]roperty, . . . the entire project cannot be considered inherently beneficial."

The record supports the Board's reasoning that "[t]he building exists because of a prior Board approval with variance relief," and plaintiff "enjoy[s] the benefit of that variance relief, which includes the absence of parking."  We discern no error in the Board's consideration of the prior variance relief in evaluating plaintiff's new application.  The record amply supports the Board's denial of plaintiff's use variance application, because it failed to satisfy the positive and negative criteria and was not an inherently beneficial use.  See Saddle Brook Realty, 388 N.J. Super. at 76.

We also reject plaintiff's argument that the Board was arbitrary, capricious, and unreasonable in determining that "the location [wa]s not particularly suited for the temple" and other uses.  Because plaintiff's application was "not 'inherently beneficial,'" it was required to "satisfy not only the 'positive criteria[]' but also the negative criteria by 'an enhanced quality of proof.'"  Cell S. of N.J. v. Zoning Bd. of Adjustment, 172 N.J. 75, 90 (2002) (quoting Smart SMR, 152 N.J. at 323) (internal quotation marks omitted).

The Board was entitled to decide questions of credibility and accept or reject the witnesses' and experts' testimony and other evidence.  See TSI E. Brunswick, LLC v. Zoning Bd. of Adjustment of E. Brunswick, 215 N.J. 26, 46

21

(2013); N.J.S.A. 40:55D-10 (listing a board's powers during hearings for applications for development, including the power to exclude evidence).

After considering all the testimony, the Board found plaintiff's proposed house of worship did not satisfy the positive criteria. It noted that Jersey City permits houses of worship in several zones and that for special reasons regarding particular suitability, plaintiff had to show a nexus between the proposed house of worship's benefit to the general welfare and the site's development being particularly appropriate for the use. The record supports the Board's conclusion that the property was "not an 'appropriate location'" to add a house of worship because "the site provide[d] no parking," and a "severe parking crisis in this particular area [wa]s unarguable."

A court generally "will not substitute its judgment for that of a board 'even when it is doubtful about the wisdom of the action.'" Cell S. of N.J., 172 N.J. at 81 (quoting Cellular Tel. Co. v. Zoning Bd. of Adjustment of Harrington Park, 90 F. Supp. 2d 557, 563 (D.N.J. 2000)). "While a board may reject expert testimony, it may not do so unreasonably, based only upon bare allegations or unsubstantiated beliefs." N.Y. SMSA, L.P. v. Bd. of Adjustment of Weehawken, 370 N.J. Super. 319, 338 (App. Div. 2004); see also Townsend v. Pierre, 221 N.J. 36, 54 (2015) (requiring experts to "'give the why and wherefore'

A-0142-24

that supports the opinion, 'rather than a mere conclusion'" (quoting Borough of Saddle River v. 66 E. Allendale, LLC, 216 N.J. 115, 144 (2013))). Plaintiff failed to establish the Board's determinations regarding the positive criteria were unreasonable.

Further, we discern no reason to disturb the Board's finding that plaintiff failed to satisfy the negative criteria. It found plaintiff's evidence did not demonstrate that granting plaintiff a use variance would "be 'consistent with the intent of the master plan and zoning ordinance.'" The Board was unpersuaded that granting the variance would not result in substantial impairment, as "[t]he proposal represent[ed] the worst of both worlds in that it introduce[d] a use not permitted in [the NC zone], without the lot area and parking that would be required if it were [in the] R-1 [zone]." It highlighted that the existing building with "apartments (without parking spaces) had been approved because it was accompanied by the commercial space," which the house of worship would largely replace in the retail corridor. The Board further noted the parking deficit existed even before "tenants . . . moved in." The record therefore supports the Board's negative criteria findings.

For these reasons, the Board's denial of plaintiff's use variance was not arbitrary, capricious, or unreasonable.

B.

We next address plaintiff's argument that the court erred in not reversing the Board based on plaintiff's RLUIPA claim. Plaintiff contends the Board's refusal to provide "the house of worship with the same parking variance previously granted to a secular use—without any changes whatsoever to the building itself—was an undeniable violation of . . . RLUIPA." Stated another way, plaintiff argues "RLUIPA was violated due to the Board's refusal to grant a variance to a religious use that was granted to a secular use for the same space." These contentions are unsupported.

"RLUIPA is 'the latest of long-running congressional efforts to accord religious exercise heightened protection from government-imposed burden, consistent with [United States Supreme Court] precedent.'" Lighthouse Inst. for Evangelism, Inc. v. City of Long Branch, 510 F.3d 253, 261 (3d Cir. 2007) (quoting Cutter v. Wilkinson, 544 U.S. 709, 714 (2005)). "RLUIPA addresses only land use regulations . . . and the religious rights of institutionalized persons." Ibid. "The land[] use section of the statute is further subdivided into two sections: Substantial Burdens, § 2000cc(a), and Discrimination and Exclusion, § 2000cc(b)." Ibid.

RLUIPA's discrimination and exclusion provision provides:

A-0142-24

(b) Discrimination and exclusion.

(1) Equal terms. No government shall impose or implement a land use regulation in a manner that treats a religious assembly or institution on less than equal terms with a nonreligious assembly or institution.

(2) Nondiscrimination. No government shall impose or implement a land use regulation that discriminates against any assembly or institution on the basis of religion or religious denomination.

(3) Exclusion and limits. No government shall impose or implement a land use regulation that –

(A) totally excludes religious assemblies from a jurisdiction; or

(B) unreasonably limits religious assemblies, institutions, or structures within a jurisdiction.

[42 U.S.C. § 2000cc(b).]

"Whereas the [s]ubstantial [b]urdens [p]rovision 'is directly responsive to the difficulty of proof' where zoning boards engage in individualized assessments, the [e]qual [t]erms and [n]ondiscrimination [p]rovisions 'enforce the Free Exercise Clause . . . against [land use regulations] that burden religion and are not neutral and generally applicable.'" Islamic Soc'y of Basking Ridge v.

Township of Bernards, 226 F. Supp. 3d 320, 341 (D.N.J. 2016) (alterations in original) (quoting 146 Cong. Rec. S7774-01 at S7775 (July 27, 2000)).[5]

"RLUIPA 'does not provide religious institutions with immunity from land use regulation, nor does it relieve religious institutions from applying for variances, special permits or exceptions, hardship approval, or other relief provisions in land use regulations, where available without discrimination or unfair delay.'" House of Fire Christian Church, 379 N.J. Super. at 544 (quoting 146 Cong. Rec. S7774-01 at S7776 (July 27, 2000)). Further, in Lighthouse, the Third Circuit Court of Appeals provided the analytical framework to evaluate RLUIPA's equal terms provision as follows: "a plaintiff . . . must show" that "(1) it is a religious assembly or institution, (2) subject to a land use regulation, which regulation (3) treats the religious assembly on less than equal terms with (4) a nonreligious assembly or institution (5) that causes no lesser harm to the

---

[5] RLUIPA defines "religious exercise" as "[t]he use, building, or conversion of real property for the purpose of religious exercise." 42 U.S.C. § 2000cc-5(7)(B). "'[L]and use regulation' means a zoning or landmarking law, or the application of such a law, that limits or restricts a claimant's use or development of land . . . , if the claimant has an ownership, . . . or other property interest in the regulated land. . . ." 42 U.S.C. § 2000cc-5(5).

A-0142-24

interests the regulation seeks to advance." 510 F.3d at 270.[6] The Board correctly argues in opposition that a review of the record demonstrates plaintiff did not fairly raise a RLUIPA argument before the Board. In fact, only Espinoza, defendant's planner, briefly raised RLUIPA during the hearing. He mentioned that RLUIPA "protects religious institutions from unduly burdensome or discriminatory land use regulations." The Board's resolution specifically recites that plaintiff did not request findings regarding RLUIPA.

We briefly address plaintiff's arguments, recognizing that "appellate courts will decline to consider questions or issues not properly presented to the trial court when an opportunity for such a presentation is available 'unless the questions so raised on appeal . . . concern matters of great public interest.'" Berardo, 476 N.J. Super. at 354 (alteration in original) (quoting Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973)).

Plaintiff's failure to present evidence before the Board on the other permitted NC zone uses prohibited a comparison of the uses and an examination of "[t]he impact of the allowed and forbidden behaviors . . . in light of the

---

[6] While the decisions of the United States District Courts and Circuit Courts on questions of federal law are not "per se" binding on New Jersey courts, they should nonetheless receive the "due respect" of appropriate observance of "the principle of 'judicial comity.'" Dewey v. R.J. Reynolds Tobacco Co., 121 N.J. 69, 80 (1990).

purpose of the regulation."   Id. at 265.   In turn, plaintiff's failure to present RLUIPA violation evidence before the Board precludes meaningful appellate review because the issues surrounding whether Jersey City's ordinance—a land use regulation—"treats the . . . [house of worship] on less than equal terms with nonreligious assemblies or institutions whose presence would cause no lesser harm" were not developed.   Lighthouse Inst., 510 F.3d at 270.[7]   And, while plaintiff argues it "advised the [B]oard of a 'comparator' with respect to . . . RLUIPA," this is belied by the record.   Therefore, plaintiff cannot meet its burden under RLUIPA.   See House of Fire Christian Church, 379 N.J. Super. at 544-47 (recognizing that the creation of a record is essential to reviewing RLUIPA's application to an ordinance and a zoning board's denial of a house of worship variance).

---

[7] In an earlier Lighthouse appeal, the Third Circuit affirmed the District Court's dismissal of the plaintiff's RLUIPA claims for failing to exhaust available remedies, concluding the plaintiff had failed to raise its RLUIPA claims before the defendant's governing body and "produce evidence to support its contention that the secular assemblies it identified were actually similarly situated such that a meaningful comparison could be made under this provision." Lighthouse Inst. for Evangelism, Inc. v. City of Long Branch (Lighthouse I), 100 F. App'x 70, 73, 77 (3d Cir. 2004); see also Lighthouse Inst. for Evangelism, Inc. v. City of Long Branch, 406 F. Supp. 2d 507, 511 (D.N.J. 2005) (stating the same).

A-0142-24

We also note plaintiff contends it is "not challeng[ing] the zoning ordinance at issue" under RLUIPA but only "the action of the Board itself." Its casting of its argument as only a challenge of the Board's ordinance application does not cure the deficiency, as it did not provide the Board the opportunity of a factual record on which to make findings.[8] Therefore, we reject plaintiff's argument that the Board's denial of plaintiff's "constitutionally and statutorily protected house of worship" warrant reversal. We discern no reason to disturb the Board's denial of plaintiff's use variance application under RLUIPA.

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division

---

[8] We note pursuant to Rule 4:69-6(c), plaintiff was permitted to seek an enlargement of time to challenge the ordinance, as "[t]he court may enlarge the period of time provided . . . where it is manifest that the interest of justice so requires." As our Supreme Court has long recognized, an exception to the forty-five-day time limitation to file an action in lieu of prerogative writs exists for "cases involving . . . important and novel constitutional questions." Brunetti v. New Milford, 68 N.J. 576, 586 (1975).

A-0142-24